JACKSONVILLE PAPER CO. *v.* UNITED STATES

**No. 6832.**—Invoices dated Helsingfors, Finland, August 16, 1938, etc.
Certified August 16, 1938, etc.
Entered at Jacksonville, Fla., September 28, 1938, etc.
Entry No. J–90, etc.

(Decided February 3, 1947)

*Ragland, Kurz & Layton* (*Louis Kurz* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *Samuel D. Spector*, special attorneys), for the defendant.

KINCHELOE, Judge: These seven appeals for reappraisement were consolidated for trial and cover importations of kraft sulphate wrapping paper exported from Finland between August 16, 1938, and July 20, 1939. The merchandise was appraised on the basis of the home or foreign market value, which was higher than the invoice values, and the importer upon entry made advances to the invoice values to meet advances of the appraiser in similar cases pending on appeal at the port of Jacksonville. In other words, the entries herein are duress entries. It is the contention of the importer, however, that the foreign market in Finland on this type of paper was a controlled market, both as to price and as to resale by wholesalers, as has been established in other cases in the case of importations of kraft paper from Sweden, and that the home or foreign value of the paper in Finland is therefore not the proper basis for appraisement. The importer further contends that the export values thereof are the

proper basis for appraisement of the instant merchandise and that such export values are represented by the invoice values, less the nondutiable charges.

Plaintiff has introduced in evidence the affidavit (exhibit 1) of Ludvid Lundquist, of Sweden, managing director of the Swedish Paper Mills' Association, dealing principally with the sale of kraft paper in Sweden, and which, so far as the home market in Sweden is concerned, states:

Affiant further says that the domestic price in Sweden is controlled by a committee composed of representatives of the paper makers' association and of the associations of wholesalers and users; that such committee fixes not only the price to be charged by the manufacturers for kraft and other paper, but as well the price to be charged therefore by the wholesalers, and also restricts the use to be made of the various types of paper by consumers; that any violation of the price lists or regulations, either or both so promulgated by such committee, may result in the exclusion of the violator from the association and make it impossible for him to obtain paper thereafter, because practically no paper is sold in Sweden except through these trade associations which control the price, sale, resale and use of paper through the joint committee aforesaid; and that such restrictions have been in force during 1936 and subsequent years.

In the last paragraph of the same affidavit it is stated, in regard to sales of kraft paper in the home market in Finland, as follows:

Affiant finally says that, in accordance with information received from and confirmed by the Finnish Paper Mills' Association, the same conditions as now outlined with regard to Sweden also applied to Finland during 1936 and subsequent years with the exception that the domestic price in Finland was and is not controlled by a committee as in the case of Sweden but fixed solely by the Finnish Paper Bureau, through which all sales of paper from the Finnish paper mills to the Finnish home market are effected.

Also for the purpose of proving a controlled market, plaintiff introduced the affidavit (exhibit 4) of Konrad Schuster, sales manager of the Finnish Paper Mills' Association, who states that he has been connected with the sale and manufacture of kraft paper in Finland for 25 years, and that he is familiar with the prices, usages, customs, and regulations under which kraft paper is manufactured and sold for home consumption in the Finnish markets, and for export; that during the period involved in these proceedings the domestic price of kraft paper in Finland has been fixed and controlled by the Finnish Paper Bureau, which fixes the prices of all sales of kraft paper from the mills to the wholesalers; and that all manufacturers of kraft paper are likewise controlled as to price by that bureau, and that under said control, consuming factories and industries cannot resell kraft paper in the raw state; that all paper is sold through the Finnish Paper Bureau, and that if there is a violation of the price lists, regulations, or restrictions prescribed by said bureau, it would be impossible for the violator to obtain paper thereafter.

The importer also offered in evidence an affidavit of James H. Madden and an affidavit of Joseph Goldstein, which, however, were objected to by the Government on the ground that the inability of the parties to attend personally was not shown. Rulings on the objections were reserved (R. 6). As the witnesses later appeared in person to testify at New York, the said affidavits are therefore excluded, with an exception to the plaintiff.

The testimony of Mr. C. G. McGehee, president of the plaintiff company, is to the effect that the price at which the imported merchandise was purchased was at the prices stated on the invoices, which prices were obtained after inquiries from various brokers (R. 7). The testimony of Mr. A. S. Reinoehl simply shows that he made the entries of the merchandise in question and corroborates Mr. McGehee's testimony that the invoice prices represent the actual prices paid for same (R. 12).

At New York the witness Joseph Goldstein appeared in person for the plaintiff, and testified that he was "not too familiar with the conditions in Finland," the country of exportation of the involved merchandise (R. 19), and the court ruled that his testimony on the material points was inadmissible as hearsay.

Plaintiff then called as a witness James H. Madden, vice president of The Jay Madden Corp., representative of Finnish paper mills through the Finnish Paper Mills' Association, the selling association for kraft paper mills in Finland (R. 28). The witness stated he was in Finland from June to September 1939, for the purpose of familiarizing himself with conditions in the kraft-paper industry, although the present importations were mostly before then. On the question of a controlled home market in Finland, his testimony was excluded or stricken out as hearsay, on objection by Government counsel. The witness otherwise testified that from the records of his company the prices paid by the Jacksonville Paper Co. for this type of paper were the same as sold to anyone else desiring to purchase it, and that they were the minimum prices at which they were allowed to sell at by the mills (R. 36), although they could try to get higher prices, if possible (R. 43). Mr. Madden stated further that the sales were made without restriction as to resale or use and that there was no difference in prices based on quantity (R. 37); that the price of counter rolls and sheets is higher than for Jumbo rolls; and that there was a color up-charge over and above the base price charged for gray and brown machine-glazed kraft paper (R. 38); that the prices paid by the plaintiff company were the same as the prices paid by other customers at the same time, as evidenced by a memorandum of such sales marked "Exhibit 6" (R. 38). Further, that the prices quoted are subject to a cash discount of 2 per centum.

Counsel for the plaintiff has moved to incorporate herein the record in *Arkell Safety Bag Co.* v. *United States*, Reap. Dec.'s 4670 and 4742, to which counsel for the Government objected on the ground that said records concerned importations of kraft paper from Sweden and not from Finland. In said cases it was shown and conceded that the home market in Sweden for paper of the kind there involved was a controlled market subject to conditions and restrictions. On the representation of counsel for the plaintiff that certain reports in the *Arkell* case, *supra*, would support his contention of a controlled home market in Finland, ruling on said motion was taken under advisement (R. 26).

Plaintiff in its brief has quoted various excerpts from two reports of Treasury Attaché May in the *Arkell* case, *supra* (exhibits 5 and 6), but inasmuch as I can find nothing competent or relevant therein as tending to prove a controlled home market in Finland for kraft paper, the said motion to incorporate is now hereby denied, with an exception to plaintiff.

In order to overcome the presumption of correctness attaching to the appraiser's finding of values herein under section 501 (a) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (T. D. 49646), the burden is, of course, upon the plaintiff first to show that the sales of kraft paper for home consumption in Finland were so controlled as to price and use as to exclude such market value as a proper basis for determining foreign market value under section 402 (c) of said act of 1930, as amended.

However, I think the evidence introduced here by the plaintiff, especially the affidavit of Lundquist (exhibit 1), at least *prima facie* establishes that the foreign home market in Finland for kraft paper is controlled as to price and use, so as to exclude it as a basis for appraisement herein, and that the evidence as to the export value of the imported merchandise is not contradicted by any evidence on the part of the defendant.

On the basis of this record I find the following facts: (1) that the market for kraft paper for home consumption in Finland is a controlled market as to price and use, and therefore cannot be taken as a basis for appraisement of the involved merchandise under said section 402 (c) of the Tariff Act of 1930; (2) that the proper basis for appraisement herein is export value as defined in section 402 (d) of said act; and (3) that such export values of the kraft paper covered by these reappraisement appeals are as shown on the invoices, less consular fee, forwarding and loading charges, inland and ocean freight, and insurance.

I therefore hold as a matter of law that the correct dutiable values of the instant merchandise are the export values as set forth in fact (3).

Judgment will be rendered accordingly.